## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  2:23-MJ-00568** |
| **Plaintiff,** | |
| **v.** | **MAGISTRATE JUDGE** **KIMBERLY A. JOLSON** |
| **ONTARIO M. YARBROUGH,** | |
| **Defendant.** | |

### UNITED STATES OF AMERICA'S RESPONSE TO DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

The United States of America, by and through undersigned counsel, hereby files its response to Defendant Ontario M. Yarbrough's Motion to Revoke Detention Order Based on a Change in Circumstances.  (Doc. 17: Motion to Revoke Detention Order Based on a Change in Circumstances, PageID 57).  The United States opposes the Motion and respectfully requests that the Motion be denied, for the reasons set forth below.

## I.    FACTUAL BACKGROUND

During the past few months, federal investigators came to believe that Yarbrough was receiving packages of controlled substances, including fentanyl, and distributing those substances in the Hilltop area of Columbus, Ohio for at least months.  The packages were being sent via the United States Postal Service from the Phoenix, Arizona area to Columbus.

During the early stages of the investigation, information came from suspected buyers of controlled substances, who indicated that Yarbrough was an individual who sold controlled substances in the Hilltop area of Columbus.

As the investigation progressed, investigators were able to observe Yarbrough receiving packages of suspected controlled substances at locations, including 273 S. Oakley Avenue and 334 S. Burgess Avenue, in Columbus.

Investigators learned that a Charter Communications account that had been tracking multiple of the suspicious packages had an email address containing Yarbrough's name associated with the account, and that yielded an identification of Yarbrough.

Later, investigators worked to obtain a search warrant to search 334 S. Burgess Avenue, and they executed the search warrant after Yarbrough accepted a package, later discovered to contain approximately 500 grams of suspected fentanyl, at 334 S. Burgess Avenue.

Inside 334 S. Burgess Avenue, investigators discovered evidence of an extensive drug trafficking operation, as well as a loaded handgun and a loaded AR-style firearm.

The United States also incorporates the evidence and exhibits proffered during the detention hearing on October 18, 2023.

## II.    **PROCEDURAL BACKGROUND**

On Friday, October 13, 2023, a criminal complaint, charging Yarbrough with possession with intent to distribute fentanyl, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and with prohibited use of a communication facility (US Mail), in violation of 21 U.S.C. § 843(b), was issued by this Court.

On Monday, October 16, 2023, Yarbrough, with counsel, appeared before this Court for an initial appearance.  On Wednesday, October 18, 2023, a detention hearing was held, and after considering the § 3142(g) factors, this Court ordered that Yarbrough be detained pending trial.

Yarbrough filed a motion to revoke the Court's detention order on Tuesday, October 24, 2023, and the Court ordered that the United States file its response to the motion by October, 30, 2023.

III.    **LAW AND ARGUMENT**

A.    STANDARD IS SET FORTH IN § 3142

As this Court is well aware, § 3142 directs the Court to consider the following factors, "in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community":

> (1) the nature and circumstances of the offense charged, including whether the offense … involves a … a controlled substance, [or] firearm …;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Also, as this Court is well aware, in this case, because of the nature of the charge in the instant matter, there exists a rebuttable presumption in favor of detention. 18 U.S.C. § 3142(e)(3)(A) (the Possession with Intent to Distribute Fentanyl count in the Criminal Complaint carries a maximum penalty of more than ten years of imprisonment). After the detention hearing in this matter, the Court found that Defendant had not rebutted the presumption in favor of detention. (Doc. 15: Order of Detention, PageID 19).

Section 3142(f) permits the Court to reopen the detention hearing,

3

> if the judicial officer finds that information exists that was not
> known to the movant at the time of the hearing and that has a
> material bearing on the issue whether there are conditions of
> release that will reasonably assure the appearance of such person
> as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

    B.    <u>DEFENDNT'S MOTION DOES NOT SIGNIFICANTLY ALTER THE
CALCULUS REGARDING DETENTION, AND IF ANYTHING, CONFIRMS
THE CONCERNS ABOUT DEFENDANT'S DANGEROUSNESS AND RISK
OF FLIGHT.</u>

Yarbrough's Motion does not significantly alter the calculus regarding his dangerousness

and the risk of flight that he poses. If anything, the information in Yarbrough's Motion increases

the evidence that he poses a danger to the community and that he is a risk of flight.

In his Motion, Yarbrough indicates that (a) he stayed "sparingly" at 459 Barclay Square

East, and instead "[m]ost of the time," he stayed at 273 S. Oakley Ave., (b) that he occupied 269

S. Warren for a short period of time, and (c) that he moved to 334 S. Burgess. (Doc. 17: Motion

to Revoke Detention Order Based on a Change in Circumstances, PageID 59-60). Given his

limited ties to 459 Barclay Square East, especially in comparison to the other properties,

Yarbrough's decision to provide his mother's only recent residence as his own address on his

driver's license is concerning.

Furthermore, this information in Yarbrough's motion is more concerning because it

increases Yarbrough's ties to residences that he was believed to utilize to further his drug

trafficking. As was proffered during the detention hearing, the subscriber address on a Charter

Communications account that was used to track the drug parcels from Arizona to Columbus was

first listed at 269 S. Warren Street and then transferred to 334 S. Burgess Street. Also as was

proffered during the detention hearing, Yarbrough received drug packages at both 273 S. Oakley

and at 334 S. Burgess Street. The information contained in Yarbrough's motion *strengthens* the

evidence against Yarbrough with regard to the crimes charged, because it strengthens Yarbrough's ties to 269 S. Warren Street, 273 S. Oakley Ave, and to 334 S. Burgess Street.

Equally as important, the information in Yarbrough's motion is concerning because it confirms that he was not honest to the Pretrial Services Officer and cannot now be trusted.  It is the recollection of undersigned counsel that, at the end of Yarbrough's Initial Appearance before the Court on Monday, October 16, 2023, the Court went out of its way to advise Yarbrough that he would be interviewed by a pretrial services officer, that Yarbrough should take the interview seriously, and that he should answer the questions honestly.  Despite this warning from the Court, Yarbrough proceeded to not take the interview seriously and to tell the pretrial services officer he was "homeless," when he was in fact, not homeless, as reflected in Yarbrough's motion.

The brief clarification in Yarbrough's motion regarding his drug use does not relieve the concerns that the Government has, if Yarbrough were to be release.  Yarbrough insists that he is not a fentanyl user and that his mother mis-spoke in her comments to the pretrial services officer, sharing her assumptions rather than what she knew to be true.  Taking Yarbrough's mother at her word, this also cuts against Yarbrough.  In light of this information, Yarbrough cannot claim that his suspected drug trafficking was motivated or driven by a drug addiction.  Instead, Yarbrough can only claim that his motivation for his drug trafficking is greed, careless to its effect on the community.

Lastly and importantly, Yarbrough's motion does not disturb the Employment History information in the Pretrial Services Report, where Yarbrough indicated that he had been "unemployed since COVID 19."  In light of this information, the fact that Yarbrough was able to pay $9,315.00 in cash for a vehicle on or about June 30, 2023, only serves to increase the

evidence that Yarbrough was indeed engaged in fentanyl trafficking for an extended period of time.

Yarbrough's motion demonstrates that he is more dangerous than believed at the detention hearing—it confirms that he has ties to the residences on Oakley, Warren and Burgess that investigators learned about during their investigation and believed Yarbrough was using to further his drug trafficking activities. Yarbrough's motion also shows that he's a greater flight risk and cannot be trusted if released—it shows that he in fact was not honest with the pretrial services officer when interviewed, despite the Court seriously advising him of the importance of the pretrial services report. Yarbrough was not homeless, but he was instead living in these homes to which investigators believed he had ties.

1.    The nature and circumstances of the offense

The United States detailed the nature and circumstances of the offense in detail during the detention hearing, and Yarbrough's motion does nothing to diminish the nature and circumstances of the offense. If anything, by admitting that he is not a fentanyl user, Yarbrough's offense is more troublesome—he sells drugs not because he has an addiction and has no other way to support his addiction, but instead he is greedy and does not care about the harm the drug inflicts upon the community.

2.    The weight of the evidence against the person

The United States detailed the weight of the evidence against Yarbrough during the detention hearing, and it is significant. Yarbrough's motion strengthens that evidence, because it affirms Yarbrough's ties to three homes that Yarbrough was believed to have used to further his drug trafficking—using Warren as an address on the Charter Communications account that tracked the packages, using Oakley to receive packages of controlled substances, and using

Burgess to receive packages of controlled substances and to distribute controlled substances. Yarbrough's motion strengthens the evidence against him.

    3.  <u>The history and characteristics of the person</u>

    Yarbrough's motion demonstrates that, despite the Court's encouragement at the initial appearance that Yarbrough take the interview with the pretrial services officer seriously, Yarbrough did not do so, and instead, he was not honest about where he resided. Instead, he indicated to the pretrial services officer that he was homeless, when he was in reality staying in homes he used to further his drug trafficking activity.

    Importantly, Yarbrough's motion does not address the fact that he indicated he was unemployed since the onset of COVID 19, and the fact that Yarbrough was nonetheless able to pay for a vehicle with approximately $9,300 in cash at the end of June 2023. This unexplained wealth cuts against Yarbrough's motion.

    4.  <u>The nature and seriousness of the danger to any person or the community that would be posed by the person's release</u>

    As detailed below, in the time since Yarbrough's detention hearing, the evidence and seriousness of danger to the community and to specific people if Yarbrough were released has grown. In a jail call on October 18, 2023, after his detention hearing, Yarbrough stated:

| | |
|---|---|
| Yarbrough: | I ain't going to lie bro, I think I might do a ten ball though. They was talking crazy at court. |
| Unknown male: | [Inaudible.] |
| Yarbrough: | That's the max. Bro, the girl part is up to twenty years, and the mail, I ain't worried about the mail, for real. The max on that is like four years. You ain't never getting maxed out for that. |
| Unknown male: | Yeah. |
| Yarbrough: | The other ones, brah… Ain't going to lie, if they came to court, damn … That's what it is, f***, bro. You come to court, I swear to God, bro, you're going to see, it's over with, but f*** that |

n****.  Bro, f***, man, I wish.  Bro, I ain't going to lie, I'm going to try and get rolled out of this b****.  They need to send me to Stryker or Butler.

Additionally, in jail calls in subsequent days, Yarbrough discussed his desire that a woman, with whom Yarbrough may have been in a relationship, return a cellular phone that was in her possession.  In the calls, Yarbrough indicated that the phone was his and that he had purchased the phone for the woman.  During one call with the woman, Yarbrough remarked, "Do me a favor.  Call Town and give him that phone back.  I'll holler at you later.  B****, you disrespectful. … I'll knock you the f*** out too.  I don't give a f***.  That's my phone.  I bought that s***."[1]  During another call with the woman, Yarbrough stated, "This is what I want you to do.  If you love me, you going to trade him that phone, go get you a Android.  If you really love me."  The woman responded, "I'm not doing it, no."  Yarbrough responded, "Hope you O.D."  During one call with the woman, Yarbrough referred to her as, "a f***ing rat."

Investigators were concerned that Yarbrough sought to obtain the return of the phone because he believed there was incriminating evidence against him on the phone.

---

[1] Town is an individual that investigators believe they have identified.

IV.    <u>**CONCLUSION**</u>

After a detention hearing, the Court determined that Defendant Ontario M. Yarbrough posed a threat to the community and that Yarbrough should be detained pending trial. Yarbrough now asks to be released from custody, pointing out that he was not honest to the pretrial officer with regard to where he lived and insisting that he has never used fentanyl. Because Yarbrough has done nothing to discount the overwhelming evidence that he still poses a threat to the community (and instead has arguably added to the evidence now), his motion should be denied.  In light of the foregoing, the United States respectfully requests that this Honorable Court deny Defendant's motion.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

By:    <u>s/ Damoun Delaviz</u>
DAMOUN DELAVIZ (PA 309631)
Assistant United States Attorney
U.S. Attorney's Office
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Damoun.Delaviz@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of October, 2023, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties, including to Steven S. Nolder, Esq., counsel for Defendant Ontario M. Yarbrough, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/ Damoun Delaviz
Damoun Delaviz (PA 309631)
Assistant United States Attorney